NO. 7872.        7872        STATE OF LOUISIANA

WILKIN HALE STATE BANK

        VS                    COURT OF APPEAL

A. B. TUCKER, ET AL.          PARISH OF ORLEANS.

---------------------

Court of Appeal
PARISH OF ORLEANS
FILED MAY 31/21
[signature]

By his Honor John St. Paul.

This is a suit on three promissory notes all drawn by defendants to the order of Pruiett, Day & Sniggs, and all dated February 4th, 1917; each for the sum of $500, and payable respectively August 24th 1917, September 24th 1917 and October 24th 1917.

Plaintiff came _bona fide_ into possession thereof on March 12th 1917, by receiving them from Moman Pruiett, a member of the law firm of Pruiett, Day & Sniggs, aforesaid; said notes having then been pledged by the said Moman Pruiett as collateral for a personal loan to himself in excess of their amount and still unpaid.

The defense, stript of details and circumstances, is substantially this; That by the transaction aforesaid no legal title to said notes passed to the plaintiff, but on the contrary the legal title to said notes is still vested in the firm of Pruiett, Day & Sniggs; and accordingly the said notes have been extinguished by certain payments made to said firm between May 26th 1917 and June 6th 1917, to wit, six payments aggregating 1535.

I.

As plaintiff came bona fide into possession of the notes

2

long before their maturity, it is perfectly clear, if at that time it acquired legal title thereto, that no subsequent payments made to Pruiett, Day & Sniggs could possibly discharge the makers thereof to the prejudice of plaintiff's right. On the other hand, if plaintiff acquired no legal titta to said notes by the transaction aforesaid, and the legal title thereto is still vested in Pruiett, Day & Sniggs, the plaintiff cannot recover upon the notes at all whether paid or unpaid.

So that the question of payments made, or not made, to Pruiett, Day & Sniggs after March 12th 1917, is wholly immaterial and irrelevant in any controversy arising between this plaintiff and these defendants; and the sole and only inquiry permissible between them is whether or not the legal title to said notes passed out of Pruiett, Day & Sniggs and over to plaintiff by the aforesaid pledge of March 12th 1917.

II.

Heretofore, when we had this case before us, we thought that there was in the record evidence sufficient and competent to warrant the conclusion reached by Judge and Jury in the court below, towit, that Noman Pruiett had the consent and authority of his partners to pledge these notes for his own personal account; and hence that plaintiff had acquired the

3

legal title thereto by the pledge of March 12th 1917.
And we so held.

But when the case reached the Supreme Court, that
court thought the evidence on which we based our judgment,
could not be considered by us. Wherefore they set aside
our judgment and remanded the case to us.

All this considered, it is now our conclusion that
without that evidence, plaintiff has not clearly established
the right of Meman Pruiett to use these notes for his own
personal account.

But a reading of our former opinion herein will show
that there is evidence, readily available, tending to show
that he had such right; and hence we think that in the interest
of justice, the case should be remanded to the court of
first instance in order to permit the introduction thereof.
For, under C. P. 906 an appellate court may remand a case
with instructions to the court agua to take further testimony
on a particular point as to which the evidence is insufficient
or not clear. Alford vs I. C. R. R. Co, 9 Orleans App. 110;
Martin vs Pechon, 158 La 829.

The judgment appealed from is therefore reversed and
set aside; and it is now ordered that this case be remanded
to the Court below for a new trial, with instructions to

4

receive evidence from either side tending to shew or deny the right of.Noman Pruiett, on March 12th 1917, to pledge the notes herein sued upon for his own personal account; and especially to admit in evidence, if offered, the testimony heretofore taken by commission but not offered at the first trial; subject however to all legal objections as to ######## relevancy and competency which might have been made thereto at the first trial; and for such other proceedings in accordance with the above opinion as may be warranted by law. The costs of this appeal to be borne by plaintiff and all other costs to await the final result.

New Orleans La, October 31st, 1921.

NO. 7872.  STATE OF LOUISIANA

WILKIN HALE STATE BANK

VS  COURT OF APPEAL

A. S. TUCKER, ET ALS.  PARISH OF ORLEANS

*On Rehearing*

7872

Judgment Affirmed.

*Claiborne, J. dissents.*

Court of Appeal
PARISH OF ORLEANS
FILED JAN 9/22
Stansbury

OPINION.

By his Honor John St. Paul.

Our two former opinions sufficiently state the circumstances of this case to show how the following questions of law arise herein, towit;

1o. Has the endorsement on the notes herein sued upon been proved by the mere fact of showing that (being payable to the order of the partnership) they were negotiated by a member of the partnership with an endorsement thereon purporting to be the signature of the firm?

2o. Does the mere fact that the notes were taken by plaintiff directly from a member of the partnership, and the proceeds applied to his personal account, constitute such notice of "defect in the title of the person negotiating the same", as to deprive plaintiff of the status of a holder in due course? Negot. Inst. Law. Sec 52.

I.

"Exactly what constitutes a signing, has never been reduced to a judicial formula. Legibility is not a requisite, x x x completeness is not a requisite x x x; the initials x x x, the first name x x x, a fictitious name x x x, an endorsement in figures, were held a

7

sufficient signing; x x x whatever the testator, or grantor, is khown to have intended as his signature, is a valid signing, no matter how imperfect or unfinished, or fantastical or illegible, or even false, the seperate characters or symbols he used might be when critically judged". Plate's Estate, 148 Penn 55y 57. And it matters not that the signing was "made with lead pencil, or typewritten, or printed, or cut from another instrument and attached". 36 Cyc 448, Hence whatever a person intends or represents or puts forth as his signature, IS his signature pro hac vice. And accordingly when Moman Pruett tendered to plaintiff a note endorsed "Pruett, Day & Sniggs, by Moman Pruett," the proof is juris et de jure that this endorsement was put there by himself.

## II.

It may be admitted that plaintiffs were held to a knowledge of the law, that one partner cannot use the partnership assets for his own individual account without the consent of his partners; and the paper gave notice on its face that it was, or had been, a partnership asset, But it did not give notice (if such were the fact) that Moman Pruett did not have the right, or the consent of his partners, to use it as he did.

8

Certainly however, there was sufficient to put plaintiff on inquiry; and prior to the adoption of the Uniform Negotiable Instrument Law, the authorities were very conflicting as to whether or not it sufficed that the holder be put on inquiry in order to constitute notice of "defect in the title of the person negotiating same". See Norton on Bills and Notes, 4th Edition, pages 429 to 453, and the copious notes thereon.

But under that law (Our act of 1904) it is provided in Section 56, that in order to constitute notice of a defect in the title of the person negotiating the note, the person to whom it is negotiated must have _actual_ _knowledge_ of the infirmity or defect, or knowledge of such facts that his action in taking the instrument _amounted_ _to_ _bad_ _faith._

Hence, "mere suspicious circumstances are not sufficient to prove, as against the holder, notice of a defect in the title of the person negotiating the note to him; but in such case there must be actual proof of knowledge of the defect, or of facts sufficient to charge him with bad faith in taking the instrument."" Levy vs Moise, 8 Orleans App. 8, 9.

9

And again; Negotiability means simply "currency".
(Miller vs Race, 1 Burrows 452; and the notes thereon in
Smith's Leading Cases, Vol 1. p. 808 et seg.) And as to
money, meaning bank notes, which we call currency, bad
faith alone will defeat the right of the taker. Mere
ground of suspicion, or defect of title, or knowledge of
circumstances which would create suspicion in the mind
of a prudent man, or gross negligence on the part of the
taker, will not defeat his title. Bad faith alone will
defeat his title.

First Nat. Bank vs Gibert & Clay, 123 La 845.
To the same effect, see Brannan, Negotiable Instrument
Law, p. 62, 63, and authorities cited.

We are therefore of opinion that plaintiff was <u>not</u>
required, when the note herein sued upon was offered for
discount by Moman Pruett of the firm of Pruett, Day &
Sniggs, to inquire of said Pruett whether he had the right,
or the consent of his partners, to use the note for his
own individual account; nor to pursue the inquiry further
if said Pruett had answered that he had such right or
consent. And its failure to do so, does not convict it
of "bad faith" in taking the note.

The judgment appealed from is therefore affirmed.